NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RAYMOND CHARLES COLLICA,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2015-3132

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-12-0618-I-2.

---

Decided: June 8, 2016

---

RAYMOND CHARLES COLLICA, Tampa, FL, pro se.

COURTNEY D. ENLOW, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ELIZABETH M. HOSFORD; REBECCA AUSPRUNG, Civilian Personnel Branch, United States Army Litigation Division, Fort Belvoir, VA.

---

Before TARANTO, BRYSON, and STOLL, *Circuit Judges.*

PER CURIAM.

Raymond Collica was employed by the Department of the Army as an attorney-advisor. He was stationed in Europe for several years. In May 2012, the Army removed him from his position for refusing a reassignment to the United States ordered by Army management. He appealed the removal to the Merit Systems Protection Board, which found the removal proper and not in retaliation for Mr. Collica's whistleblower activity. *See Collica v. Dep't of the Army*, No. DC-0752-12-0618-I-2, 2015 WL 779691 (MSPB Feb. 25, 2015) (*Final Order*); *Collica v. Dep't of the Army*, No. DC-0752-12-0618-I-2, 2013 WL 6631195 (MSPB July 10, 2013) (*Initial Decision*). We affirm.

BACKGROUND

Before his 2012 removal, Mr. Collica served as an attorney-advisor in the Army's Warrior Transition Battalion in Wiesbaden, Germany. In that position, he provided legal counsel to soldiers who were going through the Army's process for determining their fitness for continued service and eligibility for disability compensation; specifically, he advised soldiers during the phase of that process in which their medical condition was assessed to decide if they would continue to meet the Army's medical standards for retention. In September 2011, an Army-wide directive implementing the Integrated Disabilities Evaluation System moved processing, including the phase handled by Mr. Collica, to the continental United States.

Because processing would no longer take place in Europe, Mr. Collica's supervisor, Colonel Joyce Hamel, notified him on December 16, 2011, that he had until March 31, 2012, to resolve pending cases. The colonel's memorandum also offered to reassign Mr. Collica to a different attorney position—with the same basic salary

plus an increase for locality pay—at Walter Reed National Military Medical Center in Bethesda, Maryland. Mr. Collica refused the reassignment. He asserted that he was being reassigned as reprisal for whistleblower disclosures he had made in June 2010 about a plan to send attorneys from Washington, DC, to Germany for two months, a plan he considered mismanagement and a waste of funds. In response, Colonel Hamel's supervisor, Colonel Jonathan Kent, wrote to Mr. Collica that the reason for reassignment was that "there is no longer a requirement for soldiers' counsel to remain in Europe," that he saw no merit in the claim that the reassignment was in reprisal for the identified disclosures, and that the mismanagement/waste charge would be further investigated. S.A. 102–03. In the resulting investigation, the investigating lieutenant rejected Mr. Collica's charge, including its reprisal aspect.

On March 1, 2012, Colonel Hamel issued a new memorandum directing Mr. Collica's reassignment to the previously offered position at Walter Reed and explaining that failure to accept could result in his removal. The memorandum reiterated that there was no longer a need for Mr. Collica's attorney-adviser position in Europe and stated that the need for attorneys in the United States had increased. But Mr. Collica again declined the reassignment and provided reasons for doing so. Colonel Kent reviewed all of Mr. Collica's arguments for staying in Europe and decided that the management-directed reassignment would proceed. When Mr. Collica failed to accept the reassignment, Colonel Kent removed him from federal service on May 25, 2012.

Mr. Collica filed an appeal with the Merit Systems Protection Board in November 2012, challenging the removal and asserting, as an affirmative defense, retaliation for whistleblower activity. After an evidentiary hearing, the administrative judge upheld the agency's removal. She found that the agency's decision to reassign

Mr. Collica from Europe was a valid, non-arbitrary exercise of managerial discretion where an Army directive mandated relocation of all relevant processing to the United States. She also rejected the retaliation defense. She found that the disclosures at issue were protected by the Whistleblower Protection Act and were a contributing factor in the removal (under a test keyed to timing of the decision and the decision-maker's knowledge of the disclosures), but she found that the Army showed by clear and convincing evidence that it would have taken the same action even if the disclosures had not been made. Finally, the administrative judge agreed with the Army that Mr. Collica's failure to accept the directed reassignment impaired the efficiency of the service and that removal was an appropriate remedy.

Mr. Collica's petition for review, filed with the Board in October 2013, asserted errors in the administrative judge's substantive findings and procedural rulings. The Board modified the initial decision by adding an analysis of the agency's authority to reassign and remove Mr. Collica: although he raised that argument for the first time in his petition for review, relevant evidence—specifically, an August 2012 email—was among 1,800 emails provided to him by the Army just six days before the hearing with the administrative judge. Taking into account the August 2012 email, the Board determined that Colonel Kent had the authority to direct Mr. Collica's reassignment. *See Collica*, 2015 WL 779691, ¶¶ 6–11. And the Board found no other reversible error: it rejected Mr. Collica's procedural objections and agreed that the Army met its burden to defeat his whistleblower defense. *See id.* ¶¶ 12–23.

Mr. Collica appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see Terban v. Dep't of Energy*, 216 F.3d 1021, 1024 (Fed. Cir. 2000). We see no basis for disturbing the Board's decision.

There was substantial evidence to support the finding that the Army had legitimate management reasons to direct Mr. Collica's reassignment—and, consequently, that he could be removed for refusing the reassignment. *See Cobert v. Miller*, 800 F.3d 1340, 1349, 1351 (Fed. Cir. 2015); *Frey v. Dep't of Labor,* 359 F.3d 1355, 1360 (Fed. Cir. 2004). The Army-wide restructuring directive required that the soldier processing at issue, specifically the phase handled by Mr. Collica, would thereafter take place in the United States. Even the small number of soldiers granted exceptions to stay in Europe would return to the United States temporarily for processing. It therefore made sense, and the administrative judge credited Colonel Hamel's and Kent's testimony, that these changes made it important for counsel to be in the United States, not in Europe. Moreover, reliance on this reason for Mr. Collica's reassignment was no afterthought: all of the communications between Mr. Collica and his supervisors explicitly refer to the restructuring directive as the reason for the at-first-voluntary, then-mandatory reassignment, while giving him both an opportunity to respond and notice of the consequences for failure to accept. And the evidence that the Army saw the need for some paralegals to continue working in Germany does not render illegitimate the decision that attorneys performing Mr. Collica's advising function were no longer needed in Germany.

We further discern no legal or factual error in the Board's determination that Colonel Kent had the authority to direct Mr. Collica's reassignment. Mr. Collica argues otherwise based on an email sent to Colonel Kent in August 2012—after Mr. Collica's removal in May 2012—suggesting that the Army could not move Mr. Collica's position to the United States on an organizational chart without the approval of the Vice Chief of Staff. But, as the Board correctly recognized, the pertinent issue here is not who had authority to effect an internal alteration of where an existing position would sit in an organizational hierarchy. The only authority question here concerns authority to move *Mr. Collica* to a different, already-existing vacant position in the United States that would perform related tasks. As the Board succinctly put it, "[t]he movement of positions and the movement of personnel between positions are not synonymous." S.A. 17. Mr. Collica has no valid claim that Colonel Kent did not have the authority to reassign him.

Mr. Collica suggests that the reassignment was procedurally defective, pointing to Army Regulation 690-200, chapter 213, section 4-13, which provides that the responsible qualifying attorney, here the judge advocate general, must "[b]e notified before action is taken to involuntarily reassign . . . a civilian attorney." But the Board made sufficient findings that the procedure used here complied with that regulation's terms. The Board concluded that, even if the judge advocate general's approval was necessary for Mr. Collica's reassignment, Colonel Kent had obtained such approval and had supervisory authority over Mr. Collica. It relied on evidence that Mr. Collica emailed both Colonel Kent and the judge advocate general about his reassignment and that Colonel Kent responded on behalf of the judge advocate general. More generally, evidence shows that Colonel Kent coordinated with the judge advocate general, who knew about the reassignment and expressed no objections to it. The evidence here

suffices for us to uphold the Board's authority determination, apart from any question about whether Mr. Collica waived this point or whether the reassignment could be affirmed in the absence of the judge advocate general's approval.

Regarding Mr. Collica's whistleblower claim, the Army does not object to the Board's conclusion that Mr. Collica made a prima facie case of whistleblower reprisal by showing that his disclosures were protected under 5 U.S.C. § 2302(b)(8) and that they were a contributing factor in his removal under the knowledge-timing approach to that issue. It relies, instead, on the statutory basis for rejecting the claim where the agency "demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure[s]." 5 U.S.C. § 1221(e)(2). To determine whether the Army has done so here, the administrative judge and the Board properly examined the three factors identified in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). Substantial evidence supports the findings on each of those factors.

As to the first factor, *i.e.*, the strength of the agency's evidence supporting its personnel action, the administrative judge found the evidence to be very strong because the Army proved that processing would take place exclusively in the United States and there was no need for an attorney in Europe. Indeed, the attorney position in Europe has remained vacant, while the attorney position in Bethesda, Maryland, has since been filled. As to the second factor, *i.e.*, the deciding official's motive to retaliate, the administrative judge determined that Colonel Kent had a reasonable explanation for directing Mr. Collica's reassignment, was not affected by Mr. Collica's disclosures, and had no improper motive to retaliate. Although Mr. Collica's direct supervisor, Colonel Hamel, had reasons to retaliate and exhibited a dislike of Mr. Collica in numerous emails, it was Colonel Kent, not

Colonel Hamel, who made the reassignment decision. And, contrary to Mr. Collica's contentions, the judge considered and rejected his argument that Colonel Hamel participated in or had influence on the decision, relying in part on Colonel Kent's testimony that he did not recall discussing the reassignment with Colonel Hamel and that he made the decision. We see no basis for overturning the Board's findings in this regard, which rely on credibility determinations that warrant particular deference. *See Frey*, 359 F.3d at 1360–61. As to the final factor, *i.e.*, the treatment of similarly situated non-whistleblower employees, the Board reasonably found nothing to detract from the other evidence because no other employee was situated similarly to Mr. Collica.

Mr. Collica's other contentions do not undermine the Board's findings or ultimate conclusion. He says that the investigation Colonel Kent commissioned on his whistleblower claim involved a conflict of interest, but he identifies only a tenuous connection between the investigating lieutenant and Colonel Hamel (who was not the deciding official in any event). And he says that the Board failed to consider evidence of other prohibited personnel practices, but he does not adequately link the alleged error to one of the *Carr* factors or explain why consideration of those practices was necessary when the Board concluded that he had already established a prima facie case of whistleblower reprisal. Sufficient evidence supports the Board's finding that the Army showed that it would have taken the same action in the absence of Mr. Collica's disclosures.

Finally, Mr. Collica contends that many of the administrative judge's evidentiary and discovery rulings were incorrect. Such procedural matters fall within the discretion of the Board and generally call for a showing of prejudice before the Board determination is overturned. *See Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012). Here, Mr. Collica has not shown that he suffered any harm that affected his case. His main con-

tention is that the administrative judge should have given him more time to review the emails produced by the Army in discovery six days before the hearing. The Board remedied that restrictive timing in one respect: it allowed him to present an argument about the August 2012 email that would otherwise have been late. But he has offered no other reason why having more time would have mattered to his case. His other objections, including that he was prevented from putting on or adequately examining certain witnesses and that the Army did not provide requested evidence, are similarly unaccompanied by any concrete indication of a reason to think the record would have been materially different from what it actually was. We therefore reject Mr. Collica's procedural arguments.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Merit Systems Protection Board.

## AFFIRMED