NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**JOHN C. LEE,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

_____

2024-1334

_____

Petition for review of the Merit Systems Protection Board in No. SF-0752-18-0187-I-1.

_____

Decided:  August 2, 2024

_____

JOHN CHING EN LEE, Concord, CA, pro se.

LAUREL DON HAVENS, III, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

_____

Before MOORE, *Chief Judge*, PROST, *Circuit Judge*, and
MAZZANT, *District Judge*.[1]

PER CURIAM.

John Lee appeals from the November 13, 2023 decision
of the Merit Systems Protection Board (Board) denying his
petition for review and affirming the administrative
judge's (AJ) decision sustaining the Department of Home-
land Security's (DHS) charges against Mr. Lee and penal-
izing him by removal. For the reasons set forth below, we
*affirm-in-part*, *vacate-in-part*, and *remand*.

## BACKGROUND

Mr. Lee was an Immigration Services Officer II (ISO
II) with the DHS, Citizen and Immigration Services Field
Office Directorate, San Francisco Field Office. As part of
his responsibilities, Mr. Lee used an electronic database of
criminal law enforcement information called Treasury En-
forcement Communications System (TECS).

In March 2008, Mr. Lee's wife owned the Crystal Mas-
sage Parlor. The local sheriff's department executed a
search warrant on the business and arrested and charged
Mr. Lee's wife. In connection with his wife's arrest, the
DHS's Office of Inspector General (OIG) investigated
whether Mr. Lee was engaged in criminal activity. Mr. Lee
was interviewed in August 2009 as part of the investiga-
tion. On August 26, 2013, the OIG learned Mr. Lee re-
ceived a bank loan which he gave to his wife to purchase
the Crystal Massage Parlor. Mr. Lee did not disclose this
fact during his interview with the OIG in 2009. On August
30, 2013, in a second interview, Mr. Lee confirmed he

---

[1]    Honorable Amos L. Mazzant, III, District Judge,
United States District Court for the Eastern District of
Texas, sitting by designation.

obtained a bank loan and gave the money to his wife to buy the Crystal Massage Parlor.

The OIG also learned that, in March 2009, Mr. Lee conducted three unauthorized searches in TECS for various versions of his wife's name. When asked in October 2013, Mr. Lee denied conducting any unauthorized searches, including for his wife, in TECS.

Mr. Lee was prosecuted in 2015 on two counts of making false statements in violation of 18 U.S.C. § 1001. In December 2015, the DHS suspended Mr. Lee indefinitely pending the disposition of the criminal charges. In October 2016, he was convicted on one count, and sentenced to two years of probation and a fine. The DHS issued a notice of proposed removal based on three charges: (1) knowingly associating with a criminal, (2) lack of candor with two specifications, and (3) unauthorized use of TECS with one specification. In December 2017, the deciding official sustained charges 2 and 3, and Mr. Lee was removed from the DHS.

Mr. Lee appealed his removal to the Board. The Board affirmed the DHS's decision. Specifically, the Board found Mr. Lee failed to disclose to the OIG in 2009 that he took out a bank loan to give his wife money to purchase the Crystal Massage Parlor (Lack of Candor Specification 1 Charge), knowingly denied making unauthorized TECS searches of his wife's name (Lack of Candor Specification 2 Charge), and admitted making the unauthorized TECS searches (TECS Charge).

The Board found the DHS showed by preponderant evidence a nexus. With respect to charge 2, the Board found lack of candor during an interview with the OIG directly impacts the efficiency of the service. With respect to charge 3, the Board found there is a presumption of nexus where the charged misconduct occurred at work. The Board further found Mr. Lee did not present evidence to defeat the finding of nexus.

The Board sustained the penalty of removal.  In making its determination, the Board found the deciding official appropriately weighed the relevant factors in deciding the appropriate penalty.  The Board agreed the charges were quite serious and Mr. Lee's conduct eroded the necessary public trust and confidence in the agency's officers.  The Board also agreed Mr. Lee was placed on notice of his obligation of candor through prior disciplinary action, and he had notice of the appropriate use of TECS through system warnings and training.  The Board found Mr. Lee did not meet his burden to establish inconsistent penalties with comparator employees.  The Board concluded Mr. Lee's removal was reasonable and not an abuse of discretion.  Mr. Lee appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We review the Board's legal conclusions de novo and its fact findings for substantial evidence.  *Hansen v. Dep't of Homeland Sec.*, 911 F.3d 1362, 1366 (Fed. Cir. 2018).  "We may reverse the Board only if its decision is '(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.'"  *Id.*  (quoting *Cobert v. Miller*, 800 F.3d 1340, 1347–48 (Fed. Cir. 2015)).  "We defer to the Board's penalty determination unless the penalty exceeds the range of permissible punishments specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion."  *McIntosh v. Dep't of Def.*, 53 F.4th 630, 638 (Fed. Cir. 2022) (internal quotation marks omitted).

## I.

Mr. Lee argues the Board erred in sustaining the Lack of Candor Specification 1 Charge.  Mr. Lee asserts the Board should have relied on *O'Lague v. Department of*

*Veterans Affairs*, 123 M.S.P.R. 340 (2016), *aff'd*, 696 F. App'x 1034 (Fed. Cir. 2017). Lee Opening Br. at 8. We do not agree. The Board cited *Ludlum v. Department of Justice*, 278 F.3d 1280 (Fed. Cir. 2002), to support its conclusion that an agency is not necessarily required to prove the appellant provided incorrect answers to specific questions about a material issue to prove its charged lack of candor. J.A. 15. *Ludlum* explains a lack of candor charge "may involve a failure to disclose something that . . . should have been disclosed in order to make the given statement accurate and complete." 278 F.3d at 1284. The issue was whether a charge of lack of candor could be sustained when the appellant "did not respond fully and truthfully" to the agency. *Id.* at 1285. By contrast, *O'Lague* concerns a charge for lack of candor based on an affirmative misrepresentation. 123 M.S.P.R. at 348. There, the Board determined the agency was required to prove the appellant made the statement in question and he did so knowingly because the agency based its charge on an alleged affirmative misrepresentation. *Id.* Here, the Board found Mr. Lee's charge is based on an omission, not an affirmative misrepresentation to the agency. J.A. 16. Mr. Lee's omission is a failure to disclose information, which is akin to not responding fully and truthfully. J.A. 16. The Board did not err in applying *Ludlum* to the facts of this case.

Mr. Lee also argues the Board's finding that he gave incorrect or incomplete information is not supported by substantial evidence. Lee Opening Br. at 10. Specifically, Mr. Lee argues there is no evidence the OIG ever posed a question to him regarding funding of the Crystal Massage Parlor, and the charge cannot be sustained without evidence recording the specific question asked and the answer Mr. Lee gave in response. We do not agree. The Board credited the OIG's memorandum memorializing the August 2009 interview with Mr. Lee. J.A. 16. The memorandum states "Lee denied that he ever funded or gave money to [his wife] for the massage parlor. . . . Lee was asked if he

ever assisted in setting up the massage parlor business and replied no." *Id.* The Board found it had no reason to doubt this memorandum, which is consistent with the record and was prepared and signed shortly after the interview by the interviewing agents. *Id.* Mr. Lee argues agents should not be allowed to alter memorandums after the fact to support their case but does not cite to any evidence this occurred here. The Board also relied upon Mr. Lee's own admission that he did not tell the OIG in the 2009 interview about the bank loan. J.A. 16. Substantial evidence supports the Board's finding.

Mr. Lee further argues the Board erred in finding he knowingly omitted information regarding the bank loan in his 2009 interview. Lee Opening Br. at 11. He contends that he did not remember the bank loan of $30,000 when he was interviewed because his wife had already been granted diversion two months earlier, and therefore he did not necessarily withhold information. This argument is without merit. The Board found it implausible that Mr. Lee would not think it appropriate to disclose information regarding the bank loan when asked how he contributed to his wife's business. J.A. 17. The Board analyzed the progression of questions and answers recorded in the OIG's memorandum, and found Mr. Lee initially denied any involvement, but then back tracked when asked more specific questions. *Id.* The Board's finding is supported by substantial evidence. We therefore affirm the Board's finding for Mr. Lee's Lack of Candor Specification 1 Charge.

## II.

Mr. Lee argues the Board erred in sustaining the Lack of Candor Specification 2 Charge. Lee Opening Br. at 14–15. Mr. Lee argues he was never asked, point blank, whether he searched his wife's name in TECS. *Id.* at 14. Whether Mr. Lee ran the searches in question is not in dispute. J.A. 18. The Board found DHS proved Mr. Lee knowingly denied making unauthorized TECS queries of his

wife's name. J.A. 18–20. As support, the Board cited to the OIG's memorandum memorializing the October 2013 interview with Mr. Lee in which he was asked if he "ever made unauthorized queries of [his] wife in TECS for personal use." J.A. 19. Mr. Lee responded "no." J.A. 19; S. Appx.[2] 36. Mr. Lee does not dispute the accuracy of the memorandum or that he responded "no" to several questions on whether he made unauthorized queries. Even under Mr. Lee's interpretation of *O'Lague*, substantial evidence supports the Board's finding that he made a statement denying running unauthorized TECS queries.

Mr. Lee also argues the Board erred in finding he knew his statement was incorrect. Lee Opening Br. at 15–18. But the Board did not find Mr. Lee's argument that he forgot he made the TECS searches credible. J.A. 19–20. The Board found his arguments throughout the litigation were inconsistent and he was evasive in responding to direct questions about his ability to recall the TECS searches of his wife. *Id.* To the extent Mr. Lee asks us to find error in the Board's evaluation of his credibility, such credibility determinations are "virtually unreviewable." *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986). Substantial evidence thus supports the Board's finding that Mr. Lee knowingly denied making unauthorized TECS searches. We therefore affirm the Board's finding for Mr. Lee's Lack of Candor Specification 2 Charge.

## III.

Mr. Lee argues the Board erred in finding nexus with regard to the Lack of Candor Specification 2 Charge. Lee Opening Br. at 19. Specifically, Mr. Lee argues there is no nexus because the Board applied the wrong law, *Ludlum*. As discussed above, the Board correctly applied *Ludlum* to

---

[2]    S. Appx. refers to the supplemental appendix filed with the Response Brief.

the facts of this case.  The Board found Mr. Lee's lack of candor during his interview with the agency directly impacts the efficiency of the service.  J.A. 22.

Mr. Lee also argues the Board erred in finding nexus with regards to the TECS Charge because the search was performed nine years ago at the time of the hearing, and the efficiency of DHS was not affected as evidenced by his subsequent performance evaluations and bonuses.  Lee Opening Br. at 19.  The Board found Mr. Lee's conduct supported a presumption of nexus because the TECS searches occurred while he was on duty using access to a system he was granted to perform his duties.  J.A. 22.  The Board also concluded there is a presumption of nexus where the charged misconduct occurred at work.  J.A. 22 (citing *Parker v. U.S. Postal Serv.*, 819 F.2d 1113, 1116 (Fed. Cir. 1987)).  Substantial evidence supports the Board's finding of nexus.  We therefore affirm the Board's nexus finding.

IV.

Mr. Lee argues the Board erred in finding he did not suffer unfair prosecution.  Lee Opening Br. at 20.  Mr. Lee asserts his criminal prosecution for the same conduct underlying the Lack of Candor Specification 2 Charge and TECS charge is a violation of his right to equal protection and cruel and unusual punishment because comparator officers were never prosecuted, and the United States Citizen and Immigration Services (USCIS) penalty for these charges is reprimand, suspension, or removal.  *Id.* at 20–23.  DHS responds that Mr. Lee is conflating his criminal prosecution with employment discipline.  Response Br. at 18.  We agree.  The Board was responsible only for reviewing the agency-imposed penalty.  *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 302 (1981).  In its decision, the Board found the deciding official's testimony established Mr. Lee's removal was consistent with comparator cases and unrelated to his criminal prosecution.  J.A. 23–25; S. Appx. 52.

DHS, however, concedes the Board erred in consideration of the reasonableness of Mr. Lee's penalty of removal. Response Br. at 16–20. Specifically, DHS notes the deciding official erred in considering Mr. Lee's 2015 disciplinary action for lack of candor in his analysis of the "potential for rehabilitation" factor. S. Appx. 7. DHS reasons Mr. Lee's present penalty is for conduct occurring in 2009 and 2013, and therefore penalties levied in 2015 could not have had a deterrent effect and should not be considered under the "potential for rehabilitation" factor. *Meads v. Veterans Admin.*, 36 M.S.P.R. 574, 584 (1988) ("This reprimand cannot properly be considered as evidence of a prior disciplinary record since it could have had no deterrent effect on the appellant's charged misconduct. It cannot, therefore, be considered as evidence of a lack of rehabilitation potential."). DHS asks this court to remand this case to the Board to evaluate the penalty without regard to Mr. Lee's 2015 suspension under the rehabilitation *Douglas* factor. We agree. The Board erred in its review of the penalty of removal when it considered Mr. Lee's 2015 suspension. We also agree with DHS that the appropriate course of action is for this court to vacate and remand for consideration in the first instance by the Board.

## CONCLUSION

We have considered Mr. Lee's other arguments and find them unpersuasive. For the reasons discussed above, we affirm the Board with respect to its findings for the charges against Mr. Lee and nexus, but we vacate and remand with respect to the penalty of removal for further analysis consistent with this opinion.

**AFFIRMED-IN-PART, VACATED-IN PART, AND REMANDED**

## COSTS

No costs.