**Gary K. FREY, Petitioner,**

v.

**DEPARTMENT OF LABOR, Respondent.**

No. 03–3329.

United States Court of Appeals, Federal Circuit.

DECIDED: March 3, 2004.

Gary K. Frey, pro se, of Delta, Colorado.

John H. Williamson, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, and James M. Kinsella, Deputy Director.

Before MICHEL, CLEVENGER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

Gary K. Frey petitions for review of the final decision of the Merit Systems Protection Board ("Board") that sustained his removal for refusing to accept a geographical reassignment. *Frey v. Dep't of Labor*, No. DE–0752–02–0077–I–2 (M.S.P.B. Aug. 13, 2003). We affirm.

## BACKGROUND

### I.

Mr. Frey was employed by the Mine Safety and Health Administration ("MSHA"), a component of the Department of Labor ("agency"), as the supervisory coal mine inspector in charge of MSHA's field office in Delta, Colorado. The Delta Field Office is within MSHA's District 9. In June 2000, Mr. Frey and three other District 9 field office supervisors were notified by Tommy Hooker, the District 9 Assistant Director, that they were being reassigned to other District 9 field offices. Mr. Frey was reassigned to the McAlester, Oklahoma Field Office. After initially indicating that he would accept the reassignment, and after being informed that there was no vacant inspector position in Delta to which he could be demoted, Mr. Frey refused reassignment. As a result, he was removed from his position. Mr. Frey appealed his removal to the Board.

On December 19, 2001, Mr. Frey voluntarily withdrew his appeal to the Board in order to permit the agency to investigate his claims of age discrimination and retaliation for whistleblowing. Subsequently, on October 30, 2002, he refiled his appeal after receiving a final decision from the agency denying his discrimination and whistleblowing claims. Before the Board, Mr. Frey asserted the affirmative defenses of age discrimination and retaliation for whistleblowing.

### II.

Reassignments of federal employees are authorized by regulation. *See* 5 C.F.R. § 335.102 (2000). In that regard, the Board has held that discipline is warranted for refusing to accept a legitimate directed reassignment and that removal is not an unreasonably harsh penalty for such a refusal. *See, e.g., Nalbandian v. Dep't of the Interior*, 25 M.S.P.R. 691, 695 (1985). However, where a removal action is based on a refusal to accept a directed geographical reassignment, the agency must prove by a preponderance of the evidence that its reassignment decision "was bona fide, and based upon legitimate management considerations in the interest of the service." *Umshler v. Dep't of the*

*Interior,* 44 M.S.P.R. 628, 630 (1990) (citing *Ketterer v. Dep't of Agric.,* 2 MSPB 459, 2 M.S.P.R. 294, 298 (1980)). "If the employee can demonstrate that the reassignment had no solid or substantial basis in personnel practice or principle, the Board may conclude that it was not a valid discretionary management determination, but was instead either an improper effort to pressure the appellant to retire, or was at least an arbitrary and capricious adverse action." *Id.* (citing *Rayfield v. Dep't of Agric.,* 26 M.S.P.R. 244, 246 (1985)). Once it is established or unchallenged that a reassignment was properly ordered in an exercise of agency discretion under 5 C.F.R. part 335, the Board will not review the management considerations underlying that exercise of discretion. *Ketterer,* 2 M.S.P.R. at 299 n. 8.

In Mr. Frey's case, following a hearing, an administrative judge ("AJ") determined that the agency had established legitimate reasons for reassigning Mr. Frey. Mr. Hooker testified before the AJ that, as early as 1999, District 9 Director Jack Kuzar had asked him to develop a plan to address perceived deficiencies in field office operations. According to Mr. Hooker, these deficiencies included enforcement and working relationship problems at certain mines, personal relationship problems in some offices, and underachieving inspectors. He explained that after visiting the various field offices and considering a range of options, he concluded that moving supervisory inspectors would be the best way to improve field office operations. Mr. Hooker testified that he proposed a total of six reassignments to Mr. Kuzar.

Mr. Kuzar testified that his principal concern involved recent fires and accidents at three mines inspected by the Delta Field Office. He explained that he did not consider Mr. Frey to be one of his strongest inspectors in charge, and he stated that he felt another supervisor could better re-solve the problems facing the Delta Field Office. Accordingly, Mr. Kuzar accepted Mr. Hooker's proposal for reassignments and gained the necessary approval from MSHA headquarters. Among the reassignments that were authorized were the transfers of Larry Ramey to the Delta Field Office to replace Mr. Frey and of Mr. Frey to the McAlester Field Office. Both Mr. Kuzar and Mr. Hooker testified that they declined to share their reasoning for the reassignments with those who had been reassigned, Mr. Kuzar because he felt it unnecessary to explain decisions he considered within his managerial discretion and Mr. Hooker because he wanted to maintain a positive focus.

The AJ concluded that it was within the managerial discretion of Mr. Kuzar to determine that Mr. Ramey was better suited than Mr. Frey to reduce the number of accidents at mines within the jurisdiction of the Delta Field Office, based on Mr. Ramey's reputation for issuing frequent citations to bring problem mines into compliance and his extensive experience with gassy mines like the ones in the Delta area. The AJ also concluded that it was within Mr. Kuzar's discretion to determine that Mr. Frey would face less complicated enforcement problems at McAlester because that field office inspected mostly surface, rather than underground, mines. Consequently, the AJ ruled that discipline was warranted for Mr. Frey's refusal to accept reassignment, especially given Mr. Hooker's unrebutted testimony that there was no vacant inspector position in the Delta Field Office to which Mr. Frey could have been demoted and reassigned.

The AJ also considered and rejected the two affirmative defenses asserted by Mr. Frey: age discrimination and retaliation for making a protected whistleblowing disclosure. On appeal, pursuant to Federal

Circuit Rule 15(c)(1)(A)(ii), Mr. Frey has abandoned his claim of age discrimination.

Retaliation for whistleblowing disclosures is prohibited by 5 U.S.C. § 2302(b)(8) (2000). We have held that an employee alleging a violation of section 2302(b)(8) through a retaliatory personnel action must establish (1) that the acting official had the authority to take the personnel action; (2) that the employee made a disclosure · protected under section 2302(b)(8); (3) that the acting official used his or her authority to take the personnel action against the employee; and (4) that the acting official took the personnel action because of the protected disclosure. *LaChance v. White*, 174 F.3d 1378, 1380 (Fed. Cir.1999). Before the Board, Mr. Frey bore the burden of establishing his affirmative whistleblower defense by a preponderance of the evidence. *See* 5 C.F.R. § 1201.56(a)(2)(iii) (2003).

Mr. Frey alleged that his whistleblowing disclosure occurred when he sent a letter to an MSHA official in Arlington, Virginia, detailing an allegedly racially insensitive remark by Mr. Kuzar that he would feel like an "Oreo cookie" when attending an event chaired by two prominent black women. Assuming for purposes of his decision that the disclosure was a protected activity, the AJ nevertheless found that Mr. Frey failed to offer any evidence that Mr. Kuzar even knew of the disclosure during the period between the date Mr. Hooker proposed Mr. Frey's reassignment and his removal.

Having determined that the agency had established a bona fide, legitimate, management reason for Mr. Frey's geographical reassignment, and that Mr. Frey had not established either of his affirmative defenses, on July 9, 2003, the AJ sustained Mr. Frey's removal for refusing to be transferred. *Frey v. Dep't of Labor*, No. DE–0752–02–0077–I–2 (M.S.P.B. July 9, 2003). Pursuant to 5 C.F.R. § 1201.113 (2003), the AJ's initial decision became the final decision of the Board on August 13, 2003, after Mr. Frey failed to file a petition for review. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2000).

## ANALYSIS

### I.

■ Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); *see Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed.Cir.1998).

On appeal, Mr. Frey asserts that his geographical reassignment was meant to force him to retire. He contends that because Mr. Hooker made no written report or notes regarding the reassignment, and because Mr. Kuzar similarly completed no paperwork, the reassignment did not have a "substantial basis in personnel practice and principle," as required by *Umshler*, 44 M.S.P.R. at 630. Mr. Frey further contends that the implementation of reassignments in addition to his own was used as "a cover" to force him to retire. In support of his claims, Mr. Frey points to Mr. Hooker's and Mr. Kuzar's testimony that previous mine fires were not his fault but were the result of spontaneous combustion, as well as alleged threats and other forms of intimidation by Mr. Kuzar at district meetings. Mr. Frey also argues that the AJ improperly denied his request to call William Knepp as a witness. Mr. Frey asserts that Mr. Knepp would have testified to a pattern in the

agency of improperly forcing employees to transfer.

## II.

 As noted above, agencies are authorized to reassign their employees. *See* 5 C.F.R. § 335.102. At the same time, it is well established that agencies have wide discretion in exercising that authority. *See, e.g., Urbina v. United States,* 209 Ct.Cl. 192, 530 F.2d 1387, 1390 (1976) (citing, e.g., *Comberiate v. United States,* 203 Ct.Cl. 285, 288 (1973); *Burton v. United States,* 186 Ct.Cl. 172, 404 F.2d 365, 369 (1968)). Our predecessor court consistently upheld the discretion of an agency to terminate an employee who refused a geographical reassignment. *See, e.g., Comberiate,* 203 Ct.Cl. 285; *Burton,* 186 Ct.Cl. 172, 404 F.2d 365; *Schmidt v. United States,* 145 Ct.Cl. 632 (1959).

The Board explained in *Ketterer* that in the case of a removal for cause following a refusal to accept a reassignment, the agency must prove by a preponderance of the evidence that "the removal will promote the efficiency of the service"; that requires a showing that the agency's decision "was a bona fide determination based on legitimate management considerations in the interest of the service."[1] 2 M.S.P.R. at 298; *see also Umshler,* 44 M.S.P.R. at 630. In *Umshler,* the Board stated that evidence of "a legitimate management reason for the reassignment," combined with evidence that the employee not only received adequate notice of the reassignment but also refused to accept it, is sufficient to establish a prima facie case supporting the validity of the reassignment. 44 M.S.P.R. at 630; *see also Ketterer,* 2 M.S.P.R. at 299.

 Once a prima facie case is established, the burden of going forward with the evidence shifts to the employee, despite the fact that the burden of proof remains with the agency. *Umshler,* 44 M.S.P.R. at 630 (citing *Ketterer,* 2 M.S.P.R. at 299). If the employee can show that "the reassignment had no solid or substantial basis in personnel practice or principle," the Board may then conclude that the reassignment was not a valid exercise of managerial discretion, but was instead "either an improper effort to pressure the appellant to retire, or was at least an arbitrary and capricious action." *Id.* (citing *Rayfield,* 26 M.S.P.R. at 246). We endorse the Board's approach in these cases, as set forth above, and adopt it as the law of the circuit.

## III.

Turning to the matter at hand, we see no error in the Board's decision in this case. The Board determined that three mines under the jurisdiction of the Delta Field Office had experienced significant mine fires or accidents in the 1999–2000 time period; that Mr. Kuzar possessed the managerial discretion to determine that Mr. Ramey was better suited than Mr. Frey to address the problems in the Delta Field Office; and that Mr. Frey would face less complicated enforcement problems with surface mines at McAlester. These findings, which are based upon substantial evidence, fully support the Board's conclusion that the agency established a bona fide, legitimate management reason for Mr. Frey's geographical reassignment. Mr. Frey's argument that the agency did not establish the legitimacy of his reas-

---

1. This standard is in accordance with the analysis employed by our predecessor court. *See, e.g., Comberiate,* 203 Ct.Cl. at 290 ("Plaintiff's reassignment constituted a valid lateral transfer for the efficiency of the ser-

vice."); *Schmidt,* 145 Ct.Cl. at 636 ("If the order of reassignment was issued to serve political purposes and not to promote the good of the service, it was an unlawful order.").

signment is essentially an attack on the AJ's determination that the testimony of Mr. Kuzar and Mr. Hooker was credible. The evaluation of witness credibility is a matter within the discretion of the AJ and is "virtually unreviewable." *King v. Dep't of Health & Human Servs.*, 133 F.3d 1450, 1453 (Fed.Cir.1998) (quoting *Clark v. Dep't of the Army*, 997 F.2d 1466, 1473 (Fed.Cir. 1993)). Mr. Frey has not advanced sufficient reason for overturning the AJ's credibility determinations.[2]

Mr. Frey is not, as he contends, helped by our decision in *Shoaf v. Department of Agriculture*, 260 F.3d 1336 (Fed.Cir.2001). In *Shoaf*, we addressed an employee's claim that his resignation was involuntary because of agency coercion. Specifically, Mr. Shoaf claimed that his working conditions were so intolerable that he was forced to involuntarily resign or retire. Mr. Frey, by contrast, was removed for cause as a result of his refusal to accept a valid geographical reassignment; he neither resigned nor retired. Our decision in *Shoaf* is inapplicable to his situation.[3]

Finally, as far as his affirmative defense is concerned, Mr. Frey failed to present evidence before the Board that, during the relevant time, Mr. Kuzar had any knowledge of the alleged protected disclosure. Without proof of such knowledge, Mr. Frey cannot establish that his reassignment was a retaliatory personnel action. Accordingly, we will not disturb the Board's conclusion that Mr. Frey failed to establish his affirmative defense that his reassignment was in retaliation for a whistleblowing disclosure.

2. Mr. Frey has not pointed to any statute or regulation requiring that Mr. Hooker and Mr. Kuzar memorialize in writing the decision to reassign various supervisory inspectors. We thus view this claim by Mr. Frey as part of his challenge to the credibility determinations of the AJ. We have rejected that challenge.

## CONCLUSION

For the foregoing reasons, the decision of the Board is affirmed.

*AFFIRMED.*

3. Mr. Frey's complaint that he was not allowed to call Mr. Knepp as a witness is without merit. The AJ stated in his March 14, 2003 Order and Summary of Telephonic Prehearing Conference that Mr. Frey had voluntarily withdrawn his request to call Mr. Knepp.