**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| GRACE MORALES,<br>    Appellant, | DOCKET NUMBER<br>AT-1221-14-0656-W-1 |
| v. | |
| DEPARTMENT OF HOMELAND<br>    SECURITY,<br>    Agency. | DATE: February 25, 2016 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Denis P. McAllister, Esquire, Glen Cove, New York, for the appellant.

Mary E. Bagby, Esquire, Dallas, Texas, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which denied her request for corrective action in her individual right of action (IRA) appeal.  Generally, we grant petitions such as this one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to VACATE the administrative judge's finding that there was no evidence of a motive to retaliate on the part of agency officials, we AFFIRM the initial decision.

## BACKGROUND

¶2      Effective September 20, 2009, the Department of Homeland Security (the agency) appointed the appellant, under the Federal Career Intern Program, to a Criminal Investigator position with the agency's U.S. Immigration and Customs Enforcement Division. Initial Appeal File (IAF), Tab 12 at 112-13. Her excepted-service appointment was for a term not to exceed 2 years and subject to termination for unsatisfactory performance. *Id*. at 112. After the appellant completed her 6-month training course at the Federal Law Enforcement Training Center (FLETC), she began working for the agency's Homeland Security Investigations (HSI) Field Office in Panama City, Florida. *Id*. at 12-13. Effective August 10, 2010, the agency terminated the appellant during her 2-year trial period for performance and conduct reasons. *Id*. at 104-09.

¶3      On July 13, 2013, the appellant filed a whistleblower complaint with the Office of Special Counsel (OSC). IAF, Tab 1 at 18-33. In her OSC complaint, the appellant alleged that the agency committed a prohibited personnel practice

by terminating her in reprisal for disclosing the use of racial profiling to her first-line supervisor, the Resident Agent-in-Charge (RAC), on April 22, 2010. *Id*. at 25. She stated that she told her supervisor, in front of other HSI employees, that the agency was engaged in racial and ethnic profiling in connection with the local enforcement of a national operation to discover and detain certain criminal aliens residing in the United States. *Id*. She also stated that an agency employee, her Field Training Officer (FTO), and a local law enforcement officer exceeded their authority by accessing internal, sensitive, HSI law enforcement databases and running a list of Hispanic surnames to determine if unlawful aliens were residing in the Panama City, Florida area, without any reasonable suspicion of their criminal activity. *Id*. at 25, 203. She described her disclosure as an abuse of authority and a violation of law, rule, or regulation by the agency. *Id*. at 25.

¶4    During the course of OSC's investigation, the appellant provided OSC with copies of her April 22, 2010 email to the RAC and her FTO, clarifying her question about racial profiling, and the RAC's April 23, 2010 email response. IAF, Tab 1 at 196-98. OSC concluded that the appellant asked a deferential or clarifying question about racial profiling, which did not constitute a protected disclosure under 5 U.S.C. § 2302(b)(8), and issued a closure letter on February 26, 2014, terminating its investigation. *Id*. at 11-12. The appellant filed a timely IRA appeal with the Board, alleging that the agency terminated her on August 10, 2010, in reprisal for her protected disclosure of racial profiling on April 22, 2010.[2] IAF, Tab 1 at 2, Tab 8 at 4-6.

¶5    After holding a hearing and finding jurisdiction over the appeal, the administrative judge issued an initial decision denying the appellant's request for corrective action. IAF, Tab 26, Initial Decision (ID) at 1-2; IAF, Tab 25, Hearing

---

[2] Before filing her IRA appeal with the Board, the appellant filed a formal equal employment opportunity complaint on September 3, 2010, challenging her termination. IAF File, Tab 13 at 22-23. On October 10, 2011, the agency issued a final agency decision finding no discrimination, and the appellant did not appeal the decision. *Id*. at 22, 30.

Compact Disc (HCD). The administrative judge found that the appellant did not make a protected disclosure of racial profiling during her April 22, 2010 discussion at the shooting range. ID at 11-12. However, the administrative judge found that the appellant made a protected disclosure based on her April 22, 2010 email to the RAC and her FTO alleging agency abuse of its authority and a violation of its rules prohibiting racial profiling. ID at 13-15. The administrative judge also found that the appellant proved that her protected disclosure was a contributing factor to her termination because the deciding official, the Senior Agent-in-Charge (SAC), knew about the appellant's disclosure and terminated her less than 4 months later. ID at 15-16. The administrative judge nonetheless found that the agency showed by clear and convincing evidence that it would have taken the same personnel action absent the appellant's disclosure. ID at 27-28.

¶6        The appellant filed a timely petition for review. Petition for Review (PFR) File, Tab 1. The agency filed a response in opposition to her petition. PFR File, Tab 3.

## ANALYSIS

¶7        In an IRA appeal, after establishing the Board's jurisdiction, the appellant must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that she made a protected disclosure that was a contributing factor in a personnel action taken against her. 5 U.S.C. § 1221(e)(1); *Mattil v. Department of State*, 118 M.S.P.R. 662, ¶ 11 (2012). If the appellant meets that burden, the Board shall order such corrective action as it considers appropriate unless the agency shows by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure. 5 U.S.C. § 1221(e)(1)-(2); *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 12 (2011). Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm

belief as to the allegations sought to be established; it is a higher standard than the "preponderance of the evidence" standard. *Sutton v. Department of Justice*, 94 M.S.P.R. 4, ¶ 18 (2003), *aff'd*, 97 F. App'x 322 (Fed. Cir. 2004); 5 C.F.R. § 1209.4(d). The administrative judge found that the appellant established a prima facie case of whistleblower retaliation by proving that she made a protected disclosure in her April 22, 2010 email, which, under the knowledge/timing test, was a contributing factor in a personnel action taken against her. ID at 16. We affirm this finding for the reasons set forth below.

The appellant's termination is a "personnel action" under 5 U.S.C. § 2302(a)(2)(A).

¶8        On August 10, 2010, the agency terminated the appellant during her 2-year trial period. IAF, Tab 12 at 104-09. Terminating an appointment during a trial period is a "personnel action" under the Whistleblower Protection Act (WPA). *See Downing v. Department of Labor*, 98 M.S.P.R. 64, ¶¶ 2-3, 7 (2004); *see also Sirgo v. Department of Justice*, 66 M.S.P.R. 261, 267 (1995) (explaining that terminating a probationer is a personnel action under the WPA). We therefore find that the appellant has shown that the agency took a covered personnel action against her.

The appellant's disclosure of a potential abuse of authority and a violation of the agency's rules against racial profiling is a "protected disclosure" under 5 U.S.C. § 2302(b)(8).

¶9        Protected whistleblowing occurs when an appellant makes a disclosure that she reasonably believes evidences a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety. *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5 (2013); *see* 5 U.S.C. § 2302(b)(8). The proper test for determining whether an employee had a reasonable belief that her disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to, and readily ascertainable by, the employee could reasonably conclude that the actions evidenced a violation of a law, rule, or

regulation, or one of the other conditions set forth in 5 U.S.C. § 2302(b)(8). *Mudd*, 120 M.S.P.R. 365, ¶ 5.

¶10        The administrative judge found that the appellant made a protected disclosure in her April 22, 2010 email to her RAC, expressing concern that individuals were targeted for a detainment and deportation operation simply because they owned a car parked at a trailer park, they did not show up in law enforcement or immigration databases, and they had Hispanic last names.  ID at 14-15.  The administrative judge found that the appellant presented undisputed evidence that racially motivated policing violated a Department of Justice policy directive applicable to all Federal law enforcement agencies.  *Id.* at 15.  The administrative judge further found that the appellant's email disclosed an alleged violation of law, rule, or regulation, and an abuse of Government authority.  *Id.* at 14.  We agree with the administrative judge's findings on this issue.

The appellant's conversation at the gun range, seeking advice on preparing the operational plan (OPPLAN) for Operation Crosscheck without the appearance of racial profiling, is not a "protected disclosure" under 5 U.S.C. § 2302(b)(8).

¶11        The appellant further argues that she made a protected disclosure of racial profiling to her FTO and her RAC when they were at the gun range on April 22, 2010, and she expressed her concern about how to write the Crosscheck OPPLAN, without it appearing to be racial profiling in light of the local deputy's list.  PFR File, Tab 1 at 5; *see* ID at 11, n.4.  The administrative judge found that the appellant did not make a protected disclosure at the gun range because a disinterested observer who heard the appellant's allegations, as recounted by the RAC and the FTO in their testimony, could not conclude that the appellant disclosed any misconduct identified by 5 U.S.C. § 2302(b)(8)(A).  The administrative judge considered the testimony of the RAC and the FTO that the appellant based her allegation of racial profiling at the gun range simply on the local detective's presence in the predominately Hispanic trailer park and the fact that the surnames on the list he provided appeared to be of Hispanic origin.  ID

at 11. The administrative judge observed that the FTO and the RAC both described the appellant's comments about racial profiling as a "confusing and poorly conceptualized mess." *Id*. The administrative judge also considered the testimony of the RAC that he was concerned that the appellant did not know what racial profiling was and he encouraged her to go back to her FLETC materials and review the law. *Id*. The administrative judge further found that the appellant's testimony about how her FTO and her RAC reacted to her racial profiling question was not credible.[3] *Id*.

¶12    Although the appellant disputes on review that she did not make a protected disclosure of racial profiling during her racial profiling conversation at the shooting range on April 22, 2010, we find no reason to disturb the administrative judge's finding on this issue. PFR File, Tab 1 at 5-6. We find that the administrative judge thoroughly analyzed this issue and found that the RAC, the FTO, and another special agent who was at the shooting range that day gave highly credible testimony directly refuting key details of the appellant's uncorroborated account of what transpired at the shooting range in determining that there was no protected disclosure. ID at 12. The Board will not disturb an administrative judge's findings when, as in this case, he considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions of credibility. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987). We therefore affirm the administrative judge's finding that the appellant did not make a protected disclosure during her conversation at the gun range.

---

[3] The administrative judge considered the appellant's testimony that the RAC reacted to her racial profiling question by shouting at her, questioning her aggressively, and challenging her knowledge and loyalty to the office and law enforcement mission. ID at 6. The administrative judge also considered the appellant's testimony that her FTO reacted to her racial profiling question by jumping up from his seat and pacing during the discussion. *Id*.

The appellant has proven that her protected disclosure in her April 22, 2010 email to her RAC was a contributing factor in the agency's actions by satisfying the knowledge/timing test.

¶13    To prevail in her reprisal claim, the appellant must prove by preponderant evidence that her protected disclosure in her April 22, 2010 email was a contributing factor in her termination.  *See* 5 U.S.C. § 1221(e)(1).  An employee may demonstrate that a disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action.  *Scott v. Department of Justice*, 69 M.S.P.R. 211, 238 (1995), *aff'd*, 99 F.3d 1160 (Fed. Cir. 1996) (Table).    The Board commonly refers to this method of proof as the knowledge/timing test.  The Board has found that a period of more than 1 year between a protected disclosure and a personnel action can satisfy the knowledge/timing test.  *See Jones v. Department of the Interior*, 74 M.S.P.R. 666, 676 (1997).

¶14    The agency official who decided to terminate the appellant testified that she became aware of the appellant's racial profiling concerns shortly after she expressed them.  ID at 16; HCD (testimony of the SAC).  Given the deciding official's knowledge of the appellant's protected disclosure, and the proximity in time of less than 4 months between the appellant's protected disclosure and her termination on August 10, 2011, we affirm the administrative judge's finding that the appellant has shown that her protected disclosure was a contributing factor to her termination under the knowledge/timing test.  ID at 16.

The agency proved by clear and convincing evidence that it would have terminated the appellant in the absence of her protected disclosure.

¶15    The remaining issue is whether the agency met its burden of proving by clear and convincing evidence that it would have terminated the appellant even in the absence of her whistleblowing activity.  In determining whether an agency has

met this burden, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *See, e.g.*, *Yunus v. Department of Veterans Affairs*, 84 M.S.P.R. 78, ¶ 27 (1999), *aff'd*, 242 F.3d 1367 (Fed. Cir. 2001).

*The strength of the agency's evidence in support of the appellant's termination.*

¶16 In the letter terminating the appellant for performance and conduct reasons, the agency specified that the appellant: (1) responded to a traffic stop on April 14, 2010, without functional clothing or a visible weapon, and failed to follow her FTO's instructions; (2) arrived 30 minutes late for an Operation Crosscheck briefing that she was scheduled to lead on April 27, 2010; (3) refused to pat down a subject incident to an arrest, as part of Operation Crosscheck, on April 27, 2010; (4) failed to prepare for an interview as instructed, on April 30, 2010; (5) falsely identified an investigative subject within a criminal investigation database on May 25, 2010, because of her failure to conduct a thorough investigation; (6) arrived 30 minutes late for an operational briefing on June 11, 2010; and (7) failed to locate a fake lawful permanent resident card in a bag search on June 29, 2010, because of her failure to conduct a thorough investigation. IAF, Tab 12 at 106-07. The agency also noted the appellant's poor attitude and marginal performance rating at the FLETC. *Id*. at 107.

¶17 Regarding the first *Carr* factor, the administrative judge found that the agency provided strong evidence that it had legitimate reasons to terminate the

appellant during her trial period. ID at 24. The administrative judge noted that the deciding official, the SAC, testified that she terminated the appellant based on her undisputed poor conduct and performance at FLETC, and her poor conduct and performance in Panama City as reported by her FTO and the RAC.[4] ID at 6. The administrative judge also noted the deciding official's testimony that the appellant's racial profiling disclosure had no bearing on her termination. ID at 27. The administrative judge found that the deciding official was a highly credible witness, and that the FTO, the RAC, and the other agency witnesses credibly testified about the incidents cited by the deciding official in her termination letter. ID at 18-26.

¶18    Turning to the appellant's arguments regarding the first *Carr* factor, the administrative judge considered that the appellant admitted many of the incidents cited in her termination letter, but argued that some of her actions were justified. For example, the administrative judge considered the appellant's argument that she refused her FTO's April 27, 2010 order to conduct a pat down weapons search because she understood that her FTO wanted her to perform a more intrusive physical search of the male subject in violation of agency policy. ID at 21. The administrative judge nonetheless found that the FTO directed the appellant only to perform a pat down search, having made a demeanor-based determination that her FTO's testimony on this issue was firm, unhesitating, and

---

[4] It is undisputed that the appellant received a student evaluation at FLETC dated March 12, 2010, rating her performance from September 20, 2009 to March 5, 2010, as marginal in professionalism, attitude, dependability, participation, cooperativeness, and initiative. IAF File, Tab 12 at 10. The comments section of her student evaluation also noted that one of her physical techniques instructors rated her as the worst student he had seen in 4 years. *Id*. It also is undisputed that the FLETC Section Chief over basic training and the FLETC Director of Training approached the SAC in mid-February 2010, before the appellant graduated from FLETC and began working in the field office under the SAC's operational control, and informed the SAC of the appellant's performance problems. ID at 4-5. Specifically, they informed the SAC of the appellant's tardiness, lack of motivation, poor attitude, failure to follow instructions, and problems getting along with other students at the FLETC. *Id*.

credible. ID at 21-22. The administrative judge also found that the FTO's testimony was consistent with his contemporaneous notes about the incident and was corroborated by the RAC. ID at 22. In contrast, the administrative judge found improbable the appellant's testimony that her FTO spontaneously selected one subject for an invasive search by the appellant in the presence of several other officers. *Id.*

¶19    The Board must defer to an administrative judge's credibility determinations based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing, and may overturn such determinations only when it has "sufficiently sound" reasons to for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The appellant argues on review that the administrative judge did not base his credibility determinations on his observations of the witnesses' demeanor at the hearing. PFR File, Tab 1 at 8, 15. We disagree. The administrative judge explicitly made thorough and detailed credibility determinations in accordance with the Board's framework in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), and he considered the witnesses' demeanor in his analysis.[5] ID at 7-23. The administrative judge also considered the appellant's explanations for the other incidents cited in the termination letter, but found that each incident cited in the deciding official's termination decision letter was well supported by the record. ID at 24. Although the appellant takes exception to some of the administrative judge's factual findings in analyzing the parties' evidence, she does not dispute his finding that

---

[5] To resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version he believes, and explain in detail why he found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Hillen*, 35 M.S.P.R. at 458.

the agency had strong evidence to support her termination.[6]  We therefore find no reason to disturb the administrative judge's finding on this issue.

¶20    The appellant argues on review that the administrative judge's determination that the SAC and the RAC provided credible testimony is inconsistent with the evidence.  PFR File, Tab 1 at 7-8.  First, the appellant asserts specifically that the SAC did not credibly testify that on May 4, 2010, she had not already decided to terminate the appellant.  *Id*. at 11.  The appellant argues that this testimony was not credible because on May 4, 2010, the SAC already knew about the appellant's racial profiling disclosure and all of her performance deficiencies cited in her August 9, 2010 termination letter, except for the three incidents that occurred after May 4, 2010.  *Id*. at 9-12; IAF, Tab 9 at 13.  The appellant submits that this proves the SAC had already decided to terminate the appellant in retaliation for her racial profiling allegation.  PFR File, Tab 1 at 11.

¶21    Likewise, the appellant disputes the SAC's credibility insofar as she testified that she did not forward the appellant's racial profiling allegations for investigation because she assumed that the RAC had handled it.  *Id*. at 12-13.  The appellant argues that the SAC's testimony on this issue is improbable because, inter alia, "[t]he 'tag' of racial profiling in law enforcement is stigmatizing," and because the SAC was "an 'interested witness' to an allegation of racial profiling in her area of responsibility."  *Id*. at 13.  We find that the appellant's arguments on review constitute mere disagreement with the administrative judge's credibility determinations and fact findings, which does not warrant reversal of the initial decision.

---

[6] For example, the appellant disputes the administrative judge's finding that she provided "deliberately false" testimony about arriving late to a meeting on April 27, 2010.  ID at 20; PFR File, Tab 1 at 25.  The appellant states that she never denied being late and attempts to explain her testimony that the administrative judge construed as false.  PFR File, Tab 1 at 25.

¶22     As to the administrative judge's finding that the RAC was a credible witness, the appellant argues that the administrative judge failed to consider that the RAC was an interested witness in the proceeding because he supervised the office where the alleged racial profiling occurred. *Id*. at 14-21.  The appellant also argues "that the record is replete with evidence that [the] RAC . . . was quite concerned about the Appellant's allegations and had a desire to keep the lid on the disclosures." *Id*. at 15.  In support of her argument, the appellant asserts that her RAC gave a false account of what transpired at the gun range in the April 23, 2010 email he sent to the appellant.  She also asserts that the RAC routinely sent the FTO copies of his emails to the appellant, but the RAC deliberately did not include her FTO on the April 23, 2010 email to avoid incrimination because he too was at the gun range and may have remembered what occurred. *Id*. at 17-18.  The appellant contends that the administrative judge failed to consider this critical information in assessing the RAC's credibility. *Id*. at 15.  The appellant also argues that the RAC's testimony that the appellant's racial profiling allegations at the gun range were a "confusing and poorly conceptualized mess" is inconsistent with the content of their April 22-23, 2010 email exchange. *Id*.

¶23     Based on our review of the record, we find that the RAC provided consistent testimony concerning the material facts as found by the administrative judge.  ID at 12-15.  The appellant offered no new and material evidence on review to support her arguments that the RAC made false statements in his August 23, 2010 email or that the RAC and her FTO were not credible.  We further find that the record reflects that the administrative judge properly considered the record as a whole, including the appearance and substance of the April 22-23, 2010 emails about the appellant's racial profiling disclosure and the witnesses' hearing testimony, in making his credibility determinations in accordance with the Board's guidance in *Hillen*.  ID at 7-24.

¶24     Moreover, although the appellant further argues that the administrative judge failed to consider certain evidence, it is well settled that an administrative

judge's failure to mention all the evidence in the record does not mean that he did not consider it in reaching his decision. *Marques v. Department of Health & Human Services*, [22 M.S.P.R. 129](), 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). The appellant raises many other allegations, all of which we have reviewed, but we find no basis for disturbing the administrative judge's demeanor-based credibility determinations.[7] *See Frey v. Department of Labor*, [359 F.3d 1355](), 1361 (Fed. Cir. 2004) (finding that the evaluation of witness credibility is a matter within the administrative judge's discretion and is "virtually unreviewable"). Having considered the appellant's arguments on review, we affirm the administrative judge's finding that the agency provided strong evidence that it had legitimate reasons to terminate the appellant during her trial period. ID at 24.

> *The existence and strength of any motive to retaliate on the part of agency officials who were involved in the decision.*

¶25     When applying the second *Carr* factor, the Board will consider any motive to retaliate on the part of the agency officials who ordered the action, as well as any motive to retaliate on the part of other officials who influenced the decision. *See Carr*, 185 F.3d at 1326. In *Whitmore v. Department of Labor*, [680 F.3d 1353](), 1370 (Fed. Cir. 2012), the U.S. Court of Appeals for the Federal Circuit cautioned the Board against taking an unduly dismissive and restrictive view of retaliatory motive, holding that, "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the

---

[7] For example, the appellant argues that the administrative judge observed that the agency's witnesses had no prior performance and conduct problems, unlike the appellant, to suggest that she "had a propensity for erroneous decision-making, while the other Agency witnesses did not." PFR File, Tab 1 at 26. The appellant submits this as proof that the administrative judge engaged in an "inappropriate attempt at bootstrapping the 'credibility' of agency witnesses because of the absence of something." *Id*. Our review of the administrative judge's well-reasoned credibility determinations in the initial decision, however, does not support the appellant's argument. ID at 3-27.

disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees."

¶26     Here, the administrative judge found no evidence that the agency had any motive to retaliate primarily because the local police officer who generated the list of Hispanic surnames did not work for the agency and, before the appellant made her alleged protected disclosure, the officer leading Operation Crosscheck refused to include the local officer's list of names in his operation plan.[8]  ID at 8-10, 24.  The administrative judge also noted, inter alia, that the RAC testified that he believed that the appellant's racial profiling concerns were unwarranted, and that his April 23, 2010 email reiterated to the appellant that the agency would not tolerate racial profiling and employees should report it.  ID at 24-25.

¶27     The appellant's primary argument on review is that the administrative judge took an uncritical view of the SAC's and the RAC's motive to dissemble.  PFR File, Tab 1 at 7, 15.  She also appears to argue that the administrative judge failed to consider her disclosure in its entirety in analyzing the agency's motive to retaliate.  *Id*. at 22-24.  For the reasons explained below, we find that the administrative judge took an unduly restrictive view of the evidence under the second *Carr* factor.

¶28     The appellant directly implicated her FTO in her protected disclosure by alleging that he used the local police officer's list of Hispanic surnames, and he accessed sensitive HSI databases to check the immigration status of the people on that list, without any reasonable suspicion of criminal activity.  Her FTO reported to the appellant's supervisor, the RAC.  ID at 5.  The RAC reported to the SAC, who oversaw operations at the Panama City duty station and decided to terminate the appellant.  ID at 4; IAF, Tab 9 at 17.  Although the appellant's disclosure did

---

[8] Operations Crosscheck was under the authority and control of the agency's Detention and Removal Operations (DRO).  ID at 8.  The DRO officer leading Operation Crosscheck asked the RAC for the assistance of his HSI field office and that assistance included acting as a liaison with the local police and the county probation and parole office.  ID at 8-9.

not directly implicate or harm the RAC or the SAC, her protected disclosure reflected poorly on them in their capacities as supervisory employees, which is sufficient to establish a retaliatory motive. *See Whitmore*, 680 F.3d at 1370. Thus, we find that there may have been some motive to retaliate against the appellant for her protected disclosure. We therefore modify the initial decision to vacate the administrative judge's finding that there was no evidence of a motive to retaliate.

> *Any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.*

¶29     Regarding the third *Carr* factor, the administrative judge found that the parties presented very little evidence for him to consider concerning whether the agency takes similar actions against nonwhistleblower employees who are otherwise similarly situated to the appellant. ID at 27. The administrative judge noted that the deciding official testified that she had never seen a trainee agent with monthly performance ratings as negative as were the appellant's, and that she had proposed the termination of the only other special agent under her supervision who received a "marginal" FLETC evaluation; but he resigned before he was terminated. *Id*. The administrative judge did not find, however, that the special agent who resigned was similarly situated to the appellant. Moreover, the parties offered no evidence or argument addressing this *Carr* factor on review. We therefore find that the third *Carr* factor is insignificant to our analysis of this case. *See Whitmore*, 680 F.3d at 1374 (recognizing that the absence of evidence relating to the third *Carr* factor "can effectively remove that factor from the analysis").

¶30     Weighing all the *Carr* factors against one another, we agree with the administrative judge that the agency met its burden of proving by clear and convincing evidence that it would have terminated the appellant absent her protected disclosure. Although we find that the agency officials involved in the termination decision had some motive to retaliate, we conclude that the agency

had a very strong basis to terminate the appellant for her poor performance and conduct. We therefore conclude that the administrative judge properly denied the appellant's request for corrective action.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD: _____
William D. Spencer
Clerk of the Board

Washington, D.C.