# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

DANIEL BAILEY,
          Appellant,

     v.

DEPARTMENT OF THE TREASURY,
          Agency.

DOCKET NUMBER
NY-0752-17-0162-I-1

DATE:  January 3, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Daniel Bailey, Manlius, New York, pro se.

Gabriel A. Hindin, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which sustained his removal for failure to accept a directed reassignment. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the field office for further adjudication consistent with this order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

**BACKGROUND**

The appellant was formerly employed by the Office of the Comptroller of the Currency (OCC) as an Assistant Deputy Director (ADC), NB-0570-VII, in Syracuse, New York. Initial Appeal File (IAF), Tab 1 at 1. The OCC is the primary supervisor of national banks and Federal thrift institutions, and is charged with "assuring the safety and soundness of, and compliance with laws and regulations, fair access to financial services, and the fair treatment of customers by, the institutions and other persons subject to its jurisdiction." 12 U.S.C. § 1; IAF, Tab 5 at 100. Institutions under the supervision of the OCC range from small community banks and thrift institutions to some of the largest and most complex financial institutions in the world. IAF, Tab 5 at 100.

In 2013, the Comptroller of the Currency commissioned an international peer review team to assess OCC's policies relating to the agency's large and mid-size bank supervision programs. *Id*. at 91. The peer review team submitted its recommendations on December 4, 2013. *Id.* at 91, 99-121. Among other things, the peer review team recommended the establishment of a formal rotation process for all bank examination staff, in order to provide a "richer and more diverse set of experiences." *Id.* at 115.

On November 9, 2015, the agency established a new policy, PPM 5000-42, Examiner Rotational Requirements, implementing rotational requirements for certain OCC examiners. *Id.* at 80-89. The stated purpose of the policy was "to strengthen supervisory processes and examiner expertise, provide staff with a richer and more diverse set of experience, promote cross training, enhance professional and leadership development, and support agency succession planning." *Id.* at 84. The policy imposed a 10-year term limit for certain positions, including the appellant's ADC position. *Id.* at 85. On November 10, 2015, an email was sent to all OCC employees explaining the scope and purpose of the new rotation policy. *Id.* at 80-82. The email indicated that employees in positions subject to term limits would receive a letter within

30 days outlining the length of time in their position and the timing of the transition. *Id.* at 80.

By letter dated December 9, 2015, the appellant was advised that his ADC position had been designated as a position subject to a 10-year term limit, applied retroactively. *Id.* at 68-69. The letter further explained that, because he was within 1½ years of reaching the 10-year term limit, he would be granted a grace period of up to 18 months from the issuance of PPM 5000-42 to allow for sufficient time to transition to a new OCC position. *Id.* at 68.

On March 24, 2017, the Deputy Director of the Northeast District issued the appellant a letter of directed reassignment, informing him that, effective May 14, 2017, he would be reassigned to the position of Supervisory National Bank Examiner, NB-0570-VII, in New York City. *Id.* at 57-58. The appellant was instructed to notify the agency of his acceptance of the assignment, in writing, within 10 days of the notice and that his failure to accept the reassignment could result in separation. *Id.* The agency never received written notification of his decision. *Id.* at 48.

On April 11, 2017, the Deputy Director issued the appellant a notice of proposed removal. IAF, Tab 5 at 53-55. The appellant did not respond. By letter dated May 11, 2017, the Senior Deputy Comptroller of the Currency notified the appellant of his decision to remove him, effective May 13, 2017, based on his failure to accept a directed geographic reassignment.[1] *Id.* at 48-51.

This appeal followed. IAF, Tab 1. In his pleadings, the appellant identified numerous "affirmative defenses," which included both affirmative defenses for purposes of 5 U.S.C. § 7701(c)(2) and other challenges to the

_____

[1] The appellant retired on May 13, 2017. IAF, Tab 5 at 46. It is well established, however, that the Board does not lose jurisdiction over a removal appeal when the effective dates of the removal and the retirement are the same. 5 U.S.C. § 7701(j); *Mays v. Department of Transportation*, 27 F.3d 1577, 1579-81 (Fed. Cir. 1994). On the initial appeal form, the appellant checked the box indicating that he was contesting an "involuntary retirement," IAF, Tab 1 at 3, but he subsequently clarified that he intended to appeal his removal, IAF, Tab 7 at 1.

legitimacy of the agency's reasons for the reassignment.  IAF, Tab 14 at 5-100; IAF, Tab 54 at 16-107.  His affirmative defenses included (1) harmful procedural error[2] and denial of due process;[3] (2) discrimination based on age,[4] race, color, sex, and national origin;[5] (3) retaliation for equal employment opportunity (EEO) activity,[6] protected disclosures under 5 U.S.C. § 2302(b)(8)(A),[7] and protected activity under 5 U.S.C. § 2302(b)(9)(D);[8] and (4) various other prohibited personnel practices, including violations of section 2302(b)(2), (4), (6), and (12).[9] The administrative judge advised the appellant of his burden of proof with respect to his claims of harmful procedural error and discrimination based on age, race, color, sex, religion, and national origin.  IAF, Tabs 8, 46.  However, the administrative judge did not provide similar guidance concerning the remainder of the affirmative defenses.  The appellant declined a hearing.  IAF, Tab 1 at 2.

Based on her review of the written record, the administrative judge sustained the removal action.  IAF, Tab 60, Initial Decision (ID).  She first determined that the agency established its prima facie case by setting forth legitimate management reasons for the reassignment and showing that the appellant received adequate notice of the reassignment and refused to accept it. ID at 6-9.  She further found that the appellant failed to rebut the agency's case by demonstrating that the reassignment had no solid or substantial basis in personnel practice or principle.  ID at 9-19.  In the process, she also found that the appellant failed to establish his affirmative defenses for purposes of 5 U.S.C.

[2] IAF, Tab 54 at 42-72.

[3] IAF, Tab 14 at 64-66.

[4] IAF, Tab 54 at 47, 83-94, 106; IAF, Tab 14 at 37-51.

[5] IAF, Tab 54 at 94-105; IAF, Tab 14 at 10-27.

[6] IAF, Tab 54 at 53-54, 72-83, 106-07; IAF, Tab 14 at 28-37.

[7] IAF, Tab 54 at 107-08.

[8] IAF, Tab 54 at 106-07.

[9] IAF, Tab 54 at 108-12.

§ 7701(c)(2). ID at 9 n.4. Finally, the administrative judge concluded that the penalty of removal is reasonable and promotes the efficiency of the service. ID at 19-20.

On petition for review, the appellant again argues that the agency improperly imposed a retroactive term limit without a solid or substantial basis in personnel practice or principle, and reiterates his claims that the agency committed harmful procedural error; discriminated against him on the basis of age, race, color, sex, and national origin; and committed additional prohibited personnel practices.[10] Petition for Review (PFR) File, Tab 1. The agency has filed a response, to which the appellant has replied.[11] PFR File, Tabs 3-4.

## ANALYSIS

Federal agencies are authorized by regulation to reassign their employees. 5 C.F.R. § 335.102. It is well established that agencies have wide discretion in exercising that authority. *Frey v. Department of Labor*, 359 F.3d 1355, 1360 (Fed. Cir. 2004). Federal employees who refuse a geographical assignment may be removed. *Id*. The Board's review of a directed assignment action is to assure that this otherwise legitimate management tool is not used for illegitimate

---

[10] The appellant further contends that the administrative judge erred in denying the following motions: (1) his September 25, 2017 motion to compel production relating to Document Requests No. 7 (benchmark data regarding elimination of enhanced relocation benefits) and No. 10 (documents relating to management succession); and (2) his July 6, 2018 motion for leave to file a response to what he asserted was new evidence and argument contained in an agency pleading. PFR File, Tab 1 at 28-29; *see* IAF, Tab 13 at 33-36, Tab 25 at 5, Tabs 55-57. We discern no abuse of discretion in the administrative judge's rulings in these matters. *See Wagner v. Environmental Protection Agency*, 54 M.S.P.R. 447, 452 (1992) (holding that the Board will not reverse an administrative judge's rulings on discovery matters absent an abuse of discretion), *aff'd*, 996 F.2d 1236 (Fed. Cir. 1993) (Table).

[11] The appellant's reply includes a motion for leave to submit new evidence and argument. PFR File, Tab 4 at 4, 13-16. The motion is now moot, as the record will reopen on remand. The appellant's motion to amend his reply to correct a typographical error is granted. PFR File, Tab 7.

reasons. *Cooke v. U.S. Postal Service,* 67 M.S.P.R. 401, 406 (1995), *aff'd,* 73 F.3d 380 (Fed. Cir. 1995) (Table).

The Board has adopted a two-step approach for deciding an appeal of a removal action based on refusal to accept a directed reassignment. To prevail in such a case, the agency must prove by a preponderance of the evidence that the removal will promote the efficiency of the service, which requires a showing that the agency's decision was a bona fide determination based on legitimate management considerations in the interest of the service. *Ketterer v. Department of Agriculture,* 2 M.S.P.R. 294, 298 (1980). As part of its initial burden, the agency must come forward with evidence showing a legitimate management reason for the reassignment. *Id*. at 299. Together with evidence that the appellant received adequate notice of the reassignment and refused to accept it, this is ordinarily sufficient to establish a prima facie case. *Id*.

Once the agency has made a prima facie case, the burden of going forward with rebuttal evidence shifts to the appellant, although the burden of persuasion remains with the agency. *Id*.; *see Umshler v. Department of the Interior,* 44 M.S.P.R. 628, 630 (1990) (citing *Ketterer*). If the appellant can demonstrate that the reassignment had no solid or substantial basis in personnel practice or principle, the Board may conclude that it was not a valid discretionary management determination, but was instead either an improper effort to pressure the appellant to retire, or at least an arbitrary or capricious adverse action. *Umshler,* 44 M.S.P.R. at 630; *see Frey,* 359 F.3d at 1360 (endorsing the *Ketterer/Umshler* framework); *see also Cobert v. Miller,* 800 F.3d 1340, 1349 (Fed. Cir. 2015) (clarifying that the Board is bound by *Frey* and that the *Ketterer/Umshler* framework remains the law of the circuit).

We agree with the administrative judge that the agency met its initial burden of providing evidence showing a legitimate management reason for the appellant's reassignment, namely, the general rotation policy recommended by the peer review team and implemented by PPM 5000-42. Moreover, it is

undisputed that the appellant received notice of his reassignment and refused to accept it. Thus, the agency established its prima facie case, and we proceed to the question of whether the appellant has produced rebuttal evidence demonstrating that his reassignment had no solid or substantial basis in personnel practice. *See Umshler*, 44 M.S.P.R. at 630.

The appellant argues, as he did below, that the reassignment had no solid or substantial basis in personnel practice because the agency lacked the authority to retroactively convert his permanent appointment to a term appointment. However, there is nothing in the record to suggest that the appellant's appointment ceased to be permanent; rather, it was his rotational assignment that was term-limited. Moreover, as the administrative judge observed, the absence of a term limit agreement, mobility agreement, or rotational agreement does not constrain the agency's authority under 5 C.F.R. § 335.102 to reassign or transfer employees. *See Wieser v. Department of the Army*, 280 F. App'x 959, 961 (Fed. Cir. 2008) (stating that "the agency's authority to reassign its employees is based on regulations that do not make the agency's power to transfer and employee dependent on the employee's execution of a mobility agreement"); *see also id.* at 962 (stating that "the agency does not obtain its right to transfer from a particular employee's consent, nor it is it denied the right to transfer a particular employee because that employee has not previously given such consent or been specifically notified of the possibility of a transfer at some point in the future").[12] Accordingly, we find no merit to the appellant's contention that the agency acted outside its authority when it reassigned him.

---

[12] The Board may follow nonprecedential Federal Circuit decisions when it finds the court's reasoning persuasive, as we do here. *See, e.g.*, *Morris v. Department of the Navy*, 123 M.S.P.R. 662, ¶ 13 n.9 (2016). The appellant argues that *Wieser* is distinguishable because the agency in that case was restructuring its operations due to a reduced volume of work at the employee's location, whereas the workload at the Syracuse office had not decreased. This is a distinction without a difference, however, as the agency's reassignment authority under 5 C.F.R. § 335.102 is not contingent on office workload.

Another way for an appellant to successfully rebut the agency's prima facie case is to establish that the reassignment constituted a prohibited personnel practice, and was therefore not based on a legitimate management reason. *See Richard v. Department of Defense*, 66 M.S.P.R. 146, 158-59 (1995) (remanding for a determination of whether the appellant's evidence regarding her allegation of EEO retaliation was sufficient to cast doubts on the bona fides of the reassignment action); *Umshler*, 44 M.S.P.R. at 634 (vacating and remanding an initial decision sustaining a removal for failure to accept a directed reassignment where, among other things, the administrative judge failed to address the appellant's assertions that his reassignment constituted a prohibited personnel practice under 5 U.S.C. § 2302(b)(8)(A) and (b)(10)); *Craighead v. Department of Agriculture*, 6 M.S.P.R. 159, 161-62 (1981) (considering the appellant's claim of marital status discrimination in violation of 5 U.S.C. § 2302(b)(1) in determining whether the agency-directed reassignment was based on legitimate management reasons). The administrative judge was thus correct in considering the appellant's prohibited personnel practice claims both as part of his rebuttal and as affirmative defenses under 5 U.S.C. § 7701(c)(2). ID at 9 n.4; *see Craighead*, 6 M.S.P.R. at 161-62.

Here, the administrative judge considered the appellant's allegations of discrimination and EEO reprisal, which fall within the scope of 5 U.S.C. § 2302(b)(1) and (b)(9)(A). However, she did not fully address the appellant's remaining prohibited personnel practice claims. While she stated in general terms that the appellant "failed to establish that the agency violated merit principles and committed prohibited personnel practices," ID at 14-15, she did not identify, much less analyze, the appellant's specific allegations that the agency violated 5 U.S.C. § 2302(b)(2), (4), (6), (8)(A), (9)(D), and (12).[13]

---

[13] The administrative judge noted that the appellant "appeared to be raising a whistleblower retaliation claim," which could refer to his contention that the agency violated section 2302(b)(8)(A) and/or (9)(D), but she summarily rejected the claim without identifying his allegations or the statutory provisions at issue. ID at 14. She

An initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and her legal reasoning, as well as the authorities on which that reasoning rests. *Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980). Because the administrative judge did not decide all of the prohibited personnel practice claims at issue, or notify the appellant of what he had to do in order to establish those claims, we find further proceedings are needed to determine whether the appellant has successfully rebutted the agency's prima facie case.[14] *See Umshler*, 44 M.S.P.R. at 634.

On remand, the administrative judge should advise the appellant of his burden of proof regarding his prohibited personnel practice claims under 5 U.S.C. § 2302(b)(2), (4), (6), (8)(A), (9)(D), and (12), and, if necessary, provide an opportunity for further development of the record as to those claims. In addition, the administrative judge should reconsider the appellant's claims of discrimination and reprisal for EEO activity in light of the Board's intervening decision in *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, adopting her previous findings as appropriate. The administrative judge should then issue a new initial decision, consistent with this Order, that includes findings on all material issues raised by the appellant, as well as a finding as to whether all of the circumstances identified by the appellant, considered together, rebut the agency's prima facie case. *See Umshler*, 44 M.S.P.R. at 635. The administrative judge may adopt her original findings to the extent they are consistent with the additional evidence and argument considered on remand.

---

observed in a footnote that the Board's jurisdiction over individual right of action (IRA) appeals does not extend to claims of reprisal for protected activity under section 2302(b)(9)(A)(ii), *see* ID at 14 n.6, but, as the appellant's removal is an otherwise appealable action, the issue of IRA jurisdiction does not arise in this appeal.

[14] We discern no error in the administrative judge's findings regarding the appellant's claims of harmful error and denial of due process.

## ORDER

For the reasons discussed above, we remand this case to the field office for further adjudication in accordance with this remand order.

FOR THE BOARD:

*Jennifer Everling*
_____
Jennifer Everling
Acting Clerk of the Board

Washington, D.C.