NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PIERSON B. GOODMAN,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2023-2412

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-22-0663-I-1.

---

Decided: October 9, 2024

---

PIERSON GOODMAN, Wiesbaden, Hessen, Germany, pro se.

TATE NATHAN WALKER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, ALBERT S. IAROSSI, PATRICIA M. MCCARTHY.

---

Before LOURIE, TARANTO, and STARK, *Circuit Judges.*

PER CURIAM.

Pierson B. Goodman was employed as an Intelligence Specialist by the Army. He was assigned to a 36-month overseas tour in Germany, and the Army extended that tour by 24 months, but the Army declined to give Mr. Goodman a second extension for overseas work. Instead, the Army issued a reassignment order that changed Mr. Goodman's duty station to Virginia. When Mr. Goodman refused to comply with the reassignment order, the Army removed him from his position and from federal service. Mr. Goodman appealed to the Merit Systems Protection Board, which affirmed the Army's removal decision. Mr. Goodman now appeals to this court. Exercising our jurisdiction under 28 U.S.C. § 1295(a)(9), we affirm.

I

A

In 2015, the Army appointed Mr. Goodman (who had been in active military service) to an excepted-service Intelligence Specialist position with the Army Cyber Command. Appx8.[1] Almost two years later, anticipating a promotion to a Supervisory Intelligence Specialist position in Germany, Mr. Goodman signed a rotation agreement for an initial overseas tour of 36 months, beginning in April 2017. Appx8, 65. Mr. Goodman moved to Germany to serve as a signals intelligence analyst with the U.S. Army Intelligence and Security Command (INSCOM) in the 66th Military Intelligence Brigade (MIB) in Germany, Appx8–9, but that position required access to certain National Security Agency facilities, which he was not granted, Appx9. He remained nearby in Germany, however, by accepting a voluntary reassignment within the 66th MIB to the 24th

---

[1] "Appx" refers to the appendix submitted by Respondent with its brief.

Military Intelligence Battalion in a lower-grade position. Appx9, 66.

Mr. Goodman's initial 36-month overseas tour was extended by 24 months in July 2019. Appx9, 67. In April 2021, his supervisor elected not to seek a second extension for him. Appx9, 68–69. The commander of the 66th MIB issued a memorandum in support of the supervisor's decision that noted the gaps between Mr. Goodman's skillset and expertise and the mission needs of the 66th MIB. Appx9–10, 70. With no overseas extension, Mr. Goodman was expected to return to the United States in April 2022. Appx9.

Later in 2021, Mr. Goodman challenged the non-extension, arguing that as an excepted-service employee he was not subject to the INSCOM Rotation Assignment and Placement Program (IRAPP) and its 5-year limit on overseas tours, and requested an assignment to another position in Germany. Appx10. In response, the commander of the 66th MIB issued another memorandum, which concluded that Mr. Goodman was subject to IRAPP and affirmed the supervisor's non-extension decision. Appx10, 71. Mr. Goodman then asked for relief from the INSCOM commander, renewing his IRAPP exemption arguments and adding allegations of violations of whistleblower protections. Appx10–11. The Director of Support for INSCOM denied Mr. Goodman's requests. Appx11, 72—74 (September 29, 2021 memorandum).

In May 2022, the Army issued a Notice of Management Directed Reassignment (MDR). Appx12, 75–77. Under the MDR, Mr. Goodman was to be transferred to the National Ground Intelligence Center in Charlottesville, Virginia. Appx75. Mr. Goodman, declining to accept the MDR, instead initiated a grievance challenging it. Appx12–13. The grievance was rejected, and that rejection triggered another opportunity for Mr. Goodman to accept the MDR, but he refused. Appx13. The Army then issued a Notice of

Proposed Removal based on a charge of "Failure to Comply with the Rotation Policy," and after consideration of the proposal, it removed Mr. Goodman from his position and from federal service on August 26, 2022. Appx13, 81, 95.

## B

Mr. Goodman appealed his removal to the Merit Systems Protection Board, and the Board affirmed the Army's decision. *Pierson B. Goodman v. Department of the Army*, No. DC-0752-22-0663-I-1 (June 14, 2023); Appx7–63.[2] The Board first determined that the Army had made a prima facie case that the MDR was based on legitimate management reasons, Mr. Goodman had failed to rebut the Army's prima facie case, and the Army had met its ultimate burden of persuasion. Appx15–26. Next, the Board determined that Mr. Goodman had failed to prove his affirmative defense of whistleblower retaliation. Appx26–42. The Board found that he engaged in protected whistleblowing activity that the deciding official knew of when she removed him. Appx29–33 (detailing protected acts and application of knowledge/timing test). But the Board rejected the defense because it found that the Army proved—by clear and convincing evidence, analyzed with the multi-factor lens of *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999)—that it would have removed Mr. Goodman even in the absence of his protected activity. Appx34–40. Further, the Board determined that Mr. Goodman failed to prove that the Army had committed harmful procedural error or that his removal was in reprisal for protected Equal Employment Opportunity activity. Appx42–48. Finally, the Board upheld the penalty of removal as

---

[2] The initial decision of the administrative judge became the decision of the Board when Mr. Goodman declined to seek full Board review and instead appealed directly to this court.

promoting the efficiency of the service and within the bounds of reasonableness. Appx48–54.

Mr. Goodman then filed this timely appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

We will affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McLaughlin v. Office of Personnel Management*, 353 F.3d 1363, 1369 (Fed. Cir. 2004). "The petitioner bears the burden of establishing error in the Board's decision." *Harris v. Department of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

## A

We first conclude that substantial evidence supports the Board's determinations that (1) the agency established, by a preponderance of the evidence, that it had legitimate management reasons for the reassignment order underlying the removal decision and (2) Mr. Goodman failed to rebut the agency's prima facie case. In making those determinations, the Board followed the *Ketterer* framework approved by this court. *See Cobert v. Miller*, 800 F.3d 1340, 1349 (Fed. Cir. 2015); *Ketterer v. Department of Agriculture*, 2 M.S.P.R. 294, 298–99 (1980).

Regarding the legitimate management reasons supporting issuance of the MDR (Management Directed Reassignment order), the Board relied on the testimony of Mr. Kim, the INSCOM Director of Support, and Ms. Dumas, a member of Mr. Kim's staff. Appx15–17. Mr. Kim testified that he issued the MDR when his office received notice that Mr. Goodman had reached the end of his 5-year overseas

tour and had not received an extension. Appx15. Ms. Dumas explained the rationale behind this "somewhat automatic[]" process: that INSCOM had adopted the Rotation Assignment and Placement Program (IRAPP) and generally applied a 5-year limit to overseas tours, even for employees hired before the formal adoption of the program. Appx15–16. The Board also relied on the MDR memorandum and found it consistent with Mr. Kim and Ms. Dumas's testimony. Appx17. Thus, the Board concluded that Mr. Goodman's inability to remain overseas without extension beyond his 5-year tour was a legitimate management reason for the MDR. Appx17. The relied-on evidence amply supports the prima facie case of a legitimate management reason for the reassignment order.

Regarding Mr. Goodman's effort to rebut that prima facie case, the Board reasonably found the effort unpersuasive. One aspect of Mr. Goodman's argument was that the Board could not properly rely on a 5-year limit on overseas tours found in Department of Defense Instruction (DoDI) 1400.25, volume 1230—which Mr. Goodman argued applied only to competitive-service employees, not excepted-service employees (like him). The Board reasonably rejected this argument. Appx20. The Board explained that DoDI 1400.25 does not expressly exclude excepted-service employees from its application and that, in any event, Mr. Goodman had identified no authority barring the Army from applying DoDI 1400.25 to such employees. Appx20.

A second, related aspect of Mr. Goodman's argument was that the Board could not properly rely on the 5-year limit on overseas tours found in IRAPP—whose application here, Mr. Goodman argues, would violate a different DoD Instruction, namely, DoDI 1400.24 (not 1400.25). The Board reasonably rejected this argument. Appx21, 44. DoDI 1400.24 requires "voluntary execution of a mobility program agreement" before a current employee in a newly covered position becomes subject to a mobility program, *i.e.*, a "planned change of permanent duty station . . . that

may involve relocation." DoDI 1400.24, ¶¶ 3.2, 6.4. The Board reasonably determined that the provision did not apply to Mr. Goodman. Mr. Kim and Ms. Dumas testified that DoDI 1400.24 applies only to employees in the Military Intelligence Civilian Excepted Career Program because they are subject to relocation "anywhere, including between two locations in the United States." Appx21 n.5. Mr. Goodman was not subject to the same scope of relocation authority and, consequently, "was not subject to a mobility program or mobility agreement." Appx21 n.5, 44. We therefore conclude that substantial evidence supports the Board's determination regarding IRAPP, like its determination regarding DoDI 1400.24.

We also have been shown no reversible error in the Board's conclusion that, even if the Army could not find support for the reassignment order in the 5-year rules of DoDI 1400.25 and IRAPP, the order was authorized pursuant to the Secretary of Defense's broad authority over excepted-service employees granted by 10 U.S.C. § 1601(a)(1). *See* Appx18; *see also Frey v. Department of Labor*, 359 F.3d 1355, 1360 (Fed. Cir. 2004) (noting "wide discretion" of agencies' reassignment power generally).

A third aspect of Mr. Goodman's argument to rebut the prima facie case is the contention that the Board incorrectly ruled that he had been given adequate notice under IRAPP. We see no reversible error in this respect. The Board considered the several rotation agreements signed by Mr. Goodman and the issuance of several memoranda noting when his 5-year overseas tour would expire. Appx21–22. In particular, the Board noted the September 29, 2021 memorandum that confirmed the non-extension of Mr. Goodman's overseas tour and noted that "INSCOM may also direct [Mr. Goodman's] reassignment by use of a MDR." Appx21, 74. Based on this evidence, the Board correctly ruled that Mr. Goodman was provided adequate notice that he would be subject to rotation. Appx21–22.

For each of Mr. Goodman's arguments against the legitimacy of his reassignment, Mr. Goodman has not shown a lack of support in substantial evidence. And there is no indication that the Board's decision regarding the validity of the MDR was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "obtained without procedures required by law, rule, or regulation having been followed." *See* 5 U.S.C. § 7703(c).

## B

In rejecting Mr. Goodman's whistleblower defense, the Board agreed with him that he had made protected disclosures and that those disclosures were a contributing factor in his removal, *i.e.*, that he had established a prima facie case for this defense. Appx29–33. The Board rejected the defense, however, based on its determination that the Army rebutted the prima facie case by clear and convincing evidence that the Army would have removed Mr. Goodman even in the absence of Mr. Goodman's protected disclosures. Appx34–40. We have been shown no reversible error in this ruling by the Board.

The Board applied the *Carr* factors in reaching this conclusion. Appx34–40; *see Carr*, 185 F.3d at 1323. Under *Carr*, the relevant considerations are (1) the strength of the Army's evidence in support of its removal action, (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision, and (3) any evidence that the Army takes similar actions against non-whistleblower employees who are otherwise similarly situated. *See Carr*, 185 F.3d at 1323. The Board had substantial evidence to support its findings on those issues and its bottom-line determination. Appx34.

Evaluating the first *Carr* factor, the Board considered Mr. Goodman's failure to complete and return the enclosure to the MDR. Appx35. Lieutenant Colonel Sommers, the deciding official, testified to the "clear indications [that Mr. Goodman] had failed to comply with the MDR," and the

Board found that testimony to be credible. Appx36. Although Mr. Goodman asserts in his appeal that the Board failed to consider the legitimacy of the MDR when applying the first *Carr* factor, that assertion is incorrect. Rather, the Board credited Lt. Col. Sommers's testimony that "she made the [removal] decision based on the applicability of IRAPP and the agency's rotation policy," indicating the Board's consideration of the basis for the MDR. Appx36.

Evaluating the second *Carr* factor, the Board considered Lt. Col. Sommers's testimony and found that Mr. Goodman's protected disclosures did not directly or personally implicate Lt. Col. Sommers, indicating the absence of a personal motive to retaliate against Mr. Goodman. Appx36–37. Mr. Goodman's challenges to this determination are bare assertions unsupported by the record before the Board.

Evaluating the third *Carr* factor, the Board considered testimony establishing that the Army regularly reassigns excepted-service personnel when their overseas tours end. Appx37. The excepted-service intelligence personnel who testified stated that they understood that "they were subject to IRAPP and the agency's rotation policies." Appx37. We are not persuaded that this analysis is inadequate in the circumstances of this case.

Mr. Goodman says that the Board, rather than defining "similarly situated employees" as those who failed to abide by an MDR, should have limited its inquiry to employees who failed to abide by an MDR after being denied an extension of their 5-year overseas tour. That suggestion calls for too narrow a focus. Under *Carr*, the relevant adverse personnel action is removal for failure to abide by the MDR, and a comparator is someone who "engage[d] in the same kind of misconduct," *i.e.*, someone who failed to abide by an MDR. *See Carr*, 185 F.3d at 1327. Moreover, although the Army did not identify specific direct comparators, the Board found this absence of direct comparators "somewhat

expected," as the other excepted-service employees who testified understood that they were subject to rotation policies and would not fail to accept an MDR. Appx37. The Board concluded that the absence of direct comparators was not "detrimental or fatal" given "the legitimacy of the agency's reasons, the nature of [Mr. Goodman's] disclosures, and the minimal institutional motive to retaliate." Appx38. The Board's determination that this *Carr* factor is outweighed by the other factors is supported by substantial evidence.

In summary, the Board applied the correct legal framework (the *Carr* factors) to Mr. Goodman's whistleblower affirmative defense, and the Board's ultimate determination is supported by substantial evidence.

## III

We have considered Mr. Goodman's other arguments and find them unpersuasive. For the foregoing reasons, we affirm the Board's affirmance of the Army's decision to terminate Mr. Goodman.

The parties shall bear their own costs.

**AFFIRMED**